UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12131-RWZ

ENCOMPASS INSURANCE COMPANY,
AS SUBROGEE OF ANTHONY KHOURI,

Plaintiff,

v.

GREAT NORTHERN INSURANCE
COMPANY,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**INTRODUCTORY STATEMENT**

This memorandum is submitted by the Defendant Great Northern Insurance Company

("Great Northern") in support of its motion for summary judgment.  In this action, the Plaintiff

Encompass Insurance Company, as Subrogee of Anthony Khouri ("Encompass") seeks recovery

from Great Northern of $75,000 contributed to settlement of a personal injury claim against

Great Northern and Encompass' insured, Anthony Khouri ("Khouri").  Encompass contends that

Great Northern, which provided Khouri the first $500,000 layer of liability coverage, had a duty

to settle the underlying claim against Khouri for the $475,000 demanded - regardless of Great

Northern's analysis of Khouri's liability.  Encompass - which provided Khouri with a $2.5

million layer of excess coverage above the $500,000 underlying policy issued by Great Northern

- contends that Great Northern's failure to increase its offer above $400,000 caused Encompass

to pay the $75,000, and that Great Northern is liable to Encompass for that difference.

As demonstrated below, Great Northern has no duty, as a matter of law, to reimburse

Encompass for the settlement contribution that it made voluntarily.  Encompass had no duty

under its policy to make any payment before the underlying limit was exhausted by the payment

of claims, and its exercise of a business decision to protect its limits from exposure does not

trigger liability on the part of Great Northern. As such, its claim for recovery under an equitable

subrogation theory must be dismissed. Similarly, since Great Northern had no duty to

Encompass to protect its limits, its failure to reimburse Encompass for its settlement contribution

is not "unfair or deceptive" as a matter of law, and accordingly Encompass' claim under G.L.

c.93A must also be dismissed.

### STATEMENT OF UNDISPUTED MATERIAL FACTS OF RECORD

The following allegations are contained in Encompass' Complaint: Encompass and

Great Northern are each insurance companies authorized to do business in the Commonwealth of

Massachusetts (Complaint, ¶¶ 1 and 2). On or before April 10, 1999, Great Northern provided a

primary policy of insurance to the family of Anthony Khouri ("Khouri") with policy limits of

$500,000 per occurrence. Encompass provided excess coverage to Khouri with a limit of

$2,500,000, listing the Great Northern policy as underlying insurance (Complaint, ¶¶ 3 and 4

and Encompass Policy).

On or about April 10, 1999, an incident occurred involving Marc Sabini ("Sabini"),

Khouri and Domenic Riggio ("Riggio"). As a result of this incident, a lawsuit was filed in

Suffolk Superior Court, Civil Action No. 00-1723, entitled Marc Sabini, et al. v. Anthony

Khouri, et al. (the "Suffolk Action"), alleging that Sabini sustained injuries due to an assault and

battery in the negligence of Khouri and Riggio (Complaint, ¶ 6). The amount of damages

sustained by Sabini as a result of the April 10, 1999 accident exceeded $500,000 in medical

expenses alone, and Sabini presented evidence of permanent brain damage (Complaint, ¶ 8).

On or about August 19, 2003, Sabini made a settlement demand of $2,000,000 against

Great Northern and Encompass, to settle all claims contained in the Suffolk Action, based on

medical costs of over $500,000 and other damages allegedly sustained by Sabini (Complaint,

¶ 10). On or about March 2, 2004, Encompass demanded that Great Northern immediately tender its policy limits to Encompass (Complaint, ¶¶ 10 and 11, and Exhibits 3 and 4 thereto).

Subsequently, Sabini made a demand of $475,000 to settle all claims against Khouri in the Suffolk Action. Great Northern offered to pay $400,000 to settle the Suffolk Action. Encompass paid $75,000 to settle the claims in the Suffolk Action. Accordingly, based upon a $400,000 contribution by Great Northern, and a $75,000 contribution by Encompass, the two insurers settled all claims asserted against their insured, Khouri, for $475,000.

Encompass, as subrogee of Khouri, seeks to recover the $75,000 paid in settlement to Riggio by Encompass, asserting claims for equitable subrogation (First Count) and for unfair and deceptive business practices (Second Count).

## ARGUMENT

It is well settled under federal law that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (*quoting from* Fed. R. Civ. P. 56(c)), *cert. denied*, 133 L. Ed. 2d 845, 116 S. Ct. 914 (1996). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." Barbour, 63 F.3d at 37, *quoting from* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" Rogers, 902 F.2d at 143, *quoting from* Anderson, 477 U.S. at 249-50 [citations omitted]. Here, based upon the undisputed facts of record, Encompass was a volunteer in contributing to the settlement of Sabini's claims against Khouri, and as a matter of law it is not entitled to recovery from Great Northern.

**I.      AS A MATTER OF LAW, AN EXCESS INSURER IS NOT ENTITLED TO RECOVER PAYMENTS MADE VOLUNTARILY ON AN EQUITABLE SUBROGATION BASIS.**

Encompass, having contributed to the settlement of the claims in the Suffolk Action against its insured, Khouri, contends that it is entitled to equitable subrogation for such payment from Great Northern. See Hartford Casualty Insurance Co. v. New Hampshire Insurance Co., 417 Mass. 115, 124 n.7 (1994) (under Massachusetts law, an excess insurer has no right to bring a direct claim against a primary insurer, but rather is subrogated to the rights of its insured). An underlying insurer's duty to an excess insurer is no greater than that owed to its insured. Id.

It is well settled under Massachusetts law that a volunteer has no right of subrogation. Allstate Insurance Co. v. Quinn Construction Co., 713 F. Supp. 35, 37 (D. Mass. 1989), *vacated on other grounds*, 784 F. Supp. 927 (D. Mass. 1990); MacAleese's Case, 308 Mass. 513, 516 (1941); Bartholomew v. Stobbs, 280 Mass. 559, 562 (1932); United States Fidelity and Guaranty Co. v. N.J.B. Prime Investors, 6 Mass. App. Ct. 455, 460 (1978). The volunteer doctrine refers to gratuitous or quasi-contractual undertakings. National Shawmut Bank v. New Amsterdam Casualty Co., 411 F.2d 843, 849-50 (1st Cir. 1969). See 18 Am. Jur.2d 24-25, Contribution §11:

> To entitle one co-obligor to contribution from the others, it is the general rule that the payment made by him must have been **compulsory** in the sense that he must have been under a **legal obligation to pay**. A voluntary payment which he is not under legal obligation to make doe not give a right of action against his co-obligors for contribution. A payment is deemed in law to be compulsory when the party making it **cannot legally resist it**. [emphasis added].

4

In the insurance context, "an insurer is a 'volunteer' and without rights to subrogation only if it pays its insureds when it clearly has no obligation to do so under its policy." Sullivan v. Young Bros. & Co., 91 F.3d 242, 252 (1st Cir. 1996), *citing* Allstate Insurance Co., 713 F. Supp. at 38. An excess insurance carrier which makes a voluntary payment on behalf of its insured is not entitled to equitable subrogation and contribution from the primary insurer. Id. For example, absent obligatory policy language, an excess insurer is not required to "drop down" and cover that portion of a loss once it is within an insolvent primary insurer's coverage. Vickodil v. Lexington Ins. Co., 412 Mass. 132, 134 (1992), *cited in* 23-145 Appleman on Insurance § 145.3 (Bender 2004) as stating the majority rule.

Unlike a circumstance in which coverage for a claim is questionable, a payment by an insurer is deemed voluntary if there is no obligation to make payment under its policy. See Allstate Ins. Co., 713 F. Supp. at 38, *citing* 16 G. Couch, R. Anderson & M. Rhodes, *Cyclopedia of Insurance Law* § 61:57, at 140 (rev. 2d ed. 1983). As demonstrated below, Encompass was a volunteer, and as such has no right to seek recovery from Great Northern, because it cannot be disputed that it had no obligation to make payment under the terms of its policy.

## II.    BASED UPON THE UNDISPUTED MATERIAL FACTS OF RECORD, ENCOMPASS MADE THE PAYMENT TO SETTLE SABINI'S CLAIM VOLUNTARILY.

Encompass contributed to the settlement of Sabini's claims against its insured, Khouri, in the Suffolk Action, prior to exhaustion of the $500,000 underlying limit in the Great Northern policy. It was under no contractual obligation to Khouri (on whose behalf it may seek equitable subrogation from Great Northern) under the terms of the Encompass Policy, which provides in relevant part as follows:

> We will pay damages for which a <u>covered person becomes legally liable due to an occurrence</u> resulting in personal injury, bodily injury or property damage, up to the amount of liability shown in the Coverage Summary for

"Optional Excess Liability." <u>Any payment is subject to the minimum
retained limit…</u>

The Encompass Policy further defines the Limits of Liability to state that the "amount of any

payment we make is subject to the applicable minimum retained limit." The term "Minimum

Retained Limit" is defined to include "the total limits of any other insurance that applies to the

occurrence which are available to a covered person." In this case, the "Minimum Retained

Limit" is the $500,000 coverage limit in the underlying Great Northern Policy (<u>see</u> Complaint,

¶ 3).

Application of insurance policy language to known facts presents a question of law for

the Court. <u>Massachusetts Bay Transportation Authority v. Allianz Insurance Co.</u>, 413 Mass.

473, 476 (1992). Like all contracts, insurance contracts are to be construed according to the fair

and reasonable meaning of the words in which the agreement of the parties is expressed. <u>Cody</u>

<u>v. Connecticut General Life Insurance Co.</u>, 387 Mass. 142, 146 (1982). In interpreting the

provisions of an insurance policy, Courts "construe and enforce unambiguous terms according to

their plain meaning." <u>Somerset Bank v. Chicago Title Insurance Co.</u>, 420 Mass. 422, 427

(1995). When the policy provisions are "plainly and definitively expressed," the policy must be

enforced according to its terms. <u>Id.</u>

Under the plain and unambiguous language of its policy, Encompass had no duty to

contribute to the settlement of Sabini's claims raised in the Suffolk Action. The Minimum

Retained Limit, specifically the $500,000 limit of liability under Great Northern Policy to which

the Encompass Policy is expressly subject, had not been exhausted by either the payment of

claims or the payment of settlement. Encompass had the option of seeing if Sabini and Great

Northern would settle the claim between the $400,000 offered by Great Northern and its

$500,000 limit of liability.  Alternatively, Encompass could have awaited the outcome of the trial in the Suffolk Action, and a possible defense verdict on Sabini's claim against Khouri.

Instead, Encompass made a business decision to contribute the $75,000 necessary to meet Sabini's settlement demand, combined with the $400,000 offered by Great Northern.  In doing so, Encompass eliminated the $2.5 million exposure under its policy – despite the fact that it had no contractual duty to make such payment.  As a matter of law, Encompass cannot recover this payment from Great Northern, which has no obligation to share in Encompass' business decision.

## III.     ENCOMPASS' CLAIM UNDER G.L. C.93A MUST ALSO BE DISMISSED.

Because Great Northern had no direct duty Encompass, and breached no duty to Khouri, its refusal to reimburse Encompass for its $75,000 contribution to settlement of Sabini's claim is not "unfair or deceptive" as a matter of law.  See, e.g., Jet Line Services, Inc. v. American Employers Insurance Co., 404 Mass. 706, 717 (1989) and Gulezian v. Lincoln Insurance Co., 399 Mass. 606, 613 (1987) (insurer does not act unfairly or deceptively within the meaning of G.L. c.93A by making a legally correct disclaimer of coverage).  Great Northern's refusal to reimburse Encompass' voluntary payment was within its legal rights.

Furthermore, an excess insurance carrier, who participates in settlement negotiations and approves the settlement amount, may be deemed to have waived its right to challenge the settlement on bad faith grounds later.  Douglas R. Richmond, Rights and Responsibilities of Excess Insurers, 78 Denv. U.L. Rev. 29, 76 (2000), citing Cal. Union Ins. Co. v. Liberty Mutual Ins. Co., 920 F. Supp. 908, 919 (N.D. Ill. 1996) (where a second-level excess insurer, sued its underlying insurer for negligence in bad faith in failing to settle a case within the underlying

7

insurer's policy limits, because the underlying insurer continuously offered less than the

maximum policy during the settlement negotiations).

## CONCLUSION

Great Northern's Motion for Summary Judgment should be allowed, and Encompass'

Complaint should be dismissed, for the reasons contained in this Memorandum.

GREAT NORTHERN INSURANCE
COMPANY,

By its Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: February 4, 2005

/s/ Mark W. Corner
Mark W. Corner, BBO #550156
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

## CERTIFICATE OF SERVICE

I, Mark W. Corner hereby certify that on this date, February 4, 2005, I served the foregoing by causing a copy of same to be mailed, postage prepaid to:

Richard J. Conner, Esquire
424 Adams Street
Milton, Massachusetts 02186

/s/ Mark W. Corner
Mark W. Corner

(12581-617)
874152.1

8