UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12131-RWZ

ENCOMPASS INSURANCE )
COMPANY, AS SUBROGREE OF )
ANTHONY KHOURI, )
    PLAINTIFF )
     )
VS. )
     )
GREAT NORTHERN INSURANCE )
COMPANY, )
    DEFENDANT )

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

For purposes of this Opposition, the plaintiff adopts the Defendant's Statement of Undisputed Material Facts. The plaintiff also states that the first paragraph of the Defendant's Memorandum in Support of Its Motion for Summary Judgment, entitled "INTRODUCTORY STATEMENT", is an accurate statement of the case.

### ARGUMENT

**I.  ENCOMPASS IS NOT A VOLUNTEER AND ITS PAYMENT OF $75,000.00 TOWARD THE SETTLEMENT OF THE UNDERLYING CLAIM IS NOT CONSIDERED VOLUNTARY FOR PURPOSES OF DETERMINING ITS RIGHT TO ASSERT A CLAIM FOR EQUITABLE SUBROGATION AGAINST THE DEFENDANT.**

The plaintiff does not dispute that as a general rule a volunteer has no right of subrogation. However, in determining whether an insurer is a "volunteer" without rights to subrogation, the courts have taken a far more liberal approach in favor of the insurer, in deciding

1

whether the insurer's payment of a claim was "voluntary" as opposed to obligatory. In its Memorandum in Support of Its Motion for Summary Judgment, the defendant cites the case of Allstate Ins. Co. v. Quinn Const. Co., 713 F. Supp., 35 (D. Mass. 1989) for the proposition that an insurer becomes a "volunteer" when it pays its insured under circumstances where there is clearly no legal compulsion to do so. Id at 37. In Allstate, however, after applying the test to determine whether an insurance payment is voluntary, the Court concluded that the plaintiff (Allstate), was not a volunteer. Id at 38. In reaching its decision the Court relied on the case of Weir v. Federal Ins. Co., 811 F. 2nd 1387 (10th Cir. 1987). The specific language in Weir which the Court referred to is as follows:

> "The liability of an insurer need not be ironclad in order for it to settle a claim without a subsequent finding that the payment to the insured was voluntary. <u>A payment is not voluntary if it is made with a reasonable or good-faith belief in an obligation or personal interest in making that payment</u>". 713 F. Supp. At 38 (emphasis added).

The Court in Allstate also made reference to a footnote in Weir in which the Tenth Circuit enunciated that the purpose of this rule was to encourage insurers to settle promptly claims that appear to be valid. The footnote (footnote number 6) in Weir reads as follows:

> "6. There are sound policy reasons for these rules. The effect of preventing an insurer from bringing a subrogation action whenever an insurer reaches a settlement after initially challenging a claim would be to deter either settlements on investigations by insurers. But if an insurer was allowed to make a payment unreasonably and in bad faith and then pursue a subrogation action, the subrogee would be liable for many payments for which no obligation existed. <u>The requirement that an insurer have a reasonable or good-faith belief in an obligation rather than an objective showing that such an obligation exists encourages prompt settlements of claims.</u> Agricultural Ins.Co., 262 Cal. App. 2d at 779, 69 Cal. Rptr. At 55" (emphasis added).

In Allstate the Court went one step further when it said that "any doubt as to the applicability of this principal [of no subrogation for voluntary payment by the insurer] is construed in favor of the insurer and the non-existence of a volunteer status." Allstate Ins. Co. v. Quinn Const. Co., 713 F. Supp. at 35, 38, quoting 16 G. Couch, R. Anderson & M. Rhodes, Cyclopedia of Insurance Law, § 61: 57, at140 (rev. 2d ed. 1983).

The test applied by the courts in both <u>Weir</u> and <u>Allstate</u> to determine whether an insurer's payment is voluntary or non-voluntary is repeated in the Third Edition of Couch On Insurance. The applicable section states as follows:

> **§ 223:27  Payments Made in Reasonable, Good-Faith Belief in Liability Are Not Volunteered.**
>
> For purposes of determining insurer's subrogation rights, insurance payment is not voluntary if it is made with reasonable or good-faith belief in obligation or personal interest in making that payment. This standard is met when an insurer has acted in good faith to discharge a disputed obligation, even if it is ultimately determined that its insurance policy did not apply. <u>Couch On Insurance</u>, 3rd Edition, Volume 16, § 223:27, pages 223 – 44 and 223-45 (and cases cited).

When applying the good-faith/personal interest test in <u>Weir</u>, the Tenth Circuit went so far as to say that a party challenging an equitable subrogation claim on the grounds that the payment was "voluntary" must introduce evidence that the purported volunteer did <u>not</u> have a reasonable or good faith belief in an obligation or personal interest in making the payment. The Court said that absent such evidence, a jury instruction on voluntariness would be inappropriate. <u>Weir v. Federal Ins. Co.</u>, 811 F. 2nd 138, 1395. In the present action, Great Northern has offered no evidence that Encompass did not have a reasonable or good-faith belief in an obligation or a personal interest in making its payment. Applying the standard set forth in <u>Weir</u> to the instant case should, in and of itself, be grounds for the denial of the Defendant's Motion for Summary Judgment.

In discussing the liberal application to be given to this rule, in favor of the insurer, <u>Couch</u> says the following:

> "For purposes of the rule that an insurer's payment to an insured must be made under obligation rather than as a volunteer in order for the insurer to become subrogated, public policy supports a narrow interpretation of the insurer's "volunteer" status; hence, a liberal application in favor of finding that the insurer who pays is entitled to subrogation.
>
> <u>Accordingly, any doubt as to the applicability of this principle is construed in favor of the insurer and against a finding that the insurer occupied a volunteer</u>

3

status. Thus, an insurer need not delay payment until all possibilities of becoming a volunteer in payment are exhausted in order to protect its subrogation rights." Couch On Insurance, 3rd Edition, Volume 16, § 223:26, page 223 – 44 (emphasis added).

The language in yet another section of Couch is even stronger in support of finding good-faith payments by insurers to be non-voluntary. Couch On Insurance, Third Edition, § 224:165 provides as follows:

> "Insurer which has potential liability in underlying lawsuit is entitled to settle any claim alleged against it without prejudice to its right to seek equitable subrogation or indemnity from other insurers alleged to have full or partial liability for underlying claim, provided only that it acts in good faith." Couch On Insurance, 3rd Edition, Volume 16, § 224:165, page 224– 196 (and cases cited).

Another section of Couch deals specifically with payments made by excess insurers.

> "Excess insurers often find themselves potentially liable to pay claims against an insured but unable to determine actual liability until well into a claims dispute. Accordingly, and not surprisingly, courts display considerable sympathy toward excess insurers when it comes to determining whether payments made by such insurers were under sufficient obligation to allow the insurer to seek subrogation. As one court determined, the excess insurer does not have to be assured that its reading of the policy will be accepted in court in order to receive indemnification." Couch On Insurance, 3rd Edition, Volume 16, § 223:32, page 223-55 (and cases cited).

In its general discussion of subrogation, American Jurisprudence (3rd Edition) further defines the exception to the "volunteer" rule for "persons acting in self-protection".

> "The right of subrogation is not necessarily confined to those who are legally bound to make the payment, but extends as well to persons who pay the debt in self-protection, since they might suffer loss if the obligation is not discharged. A person who has an interest to protect by making the payment is not regarded as a volunteer. The extent or quantity of the subrogee's interest which is in jeopardy is not material if he has any palpable interest which will be protected by the extinguishment of the debt. The courts impose additional requirements that the person making the payment be acting in good faith and under a reasonable belief that it is necessary to his protection even though it turns out that he had no interest to protect." 73 Am. Jur. (3rd Edition), Subrogation § 22, page 565 23 (emphasis

4

added). See also <u>Commercial Union Ins. Co. v. Postin</u> 610 P. 2d, 984, 989-91 (Wyo. 1980).

When applying the test enunciated in <u>Weir</u>, <u>Allstate</u> and the cases cited therein, as well as the language contained in commentaries such as <u>Couch</u> and <u>American Jurisprudence</u> (3rd Edition), to the facts of this case, it is clear that Encompass has passed both the test of "good faith" and of "personal interest". As set forth in its Complaint, Encompass paid $75,000.00 to settle the underlying lawsuit in order to "protect its own interests and the interests of its insured, Anthony Khouri". (Plaintiff's Complaint - Paragraph 14). In doing so, Encompass was clearly demonstrating good faith toward its insured by seeing to it that the case was resolved without exposing its insured to excess liability. It may even by argued that by contributing $75,000.00 to ensure that the case was settled, Encompass was also acting in good faith toward Great Northern, the primary insurance carrier, with respect to this loss. Had the case not settled and a trial ensued, in the event that the plaintiff prevailed there was a reasonable likelihood that the judgment would have been in excess of the defendant's primary coverage of $500,000.00.[1] By voluntarily offering $75,000.00 to complete the settlement, Encompass ensured that Great Northern initially would pay no more than the $400,000.00 it had offered. Furthermore, should Encompass prevail in this equitable subrogation action, the most that Great Northern will have to pay is an additional $75,000.00, which still results in a total payment which is less than Great Northern's policy limits.

It should also be pointed out that Encompass' decision to pay $75,000.00 towards the settlement of the underlying action only came about after the lower court had denied the Motion for Summary Judgment filed on behalf the defendant ( its insured), Anthony Khouri. In denying that motion the Court (E. Murphy, J.) ruled that " . . . there is evidence upon which a reasonable fact finder could find Khouri's negligence was a proximate cause of the injuries, either independently or as a result of joint enterprise with Riggio". (Plaintiff's Complaint - Paragraph 7 and Exhibit 2). Given the lower court's ruling on the summary judgment motion, it was reasonable for Encompass to conclude

---

[1] As the defendant states in its Statement of Undisputed Material Facts, the plaintiff's medical expenses alone exceeded $500,000.00 and the plaintiff had presented evidence of permanent brain damage.

5

that had this matter proceeded to trial, the case would have been decided by a jury verdict, rather than a directed verdict by the court. Accordingly, Encompass acted in good faith with respect to both its insured and the primary carrier by seeing to it that the issue of damages (in the event the plaintiff prevailed), would not be left in the hands of a jury.

As for the second test of "personal interest" or "self-protection", Encompass has done nothing to conceal the fact that its decision to contribute $75,000.00, in order to finalize the settlement of the underlying claim, was motivated in large part by "self-protection". The Encompass policy carried excess limits of $2,500,000.00 which would have been exposed had a settlement not been reached. The defendant is correct when it refers to the payment by Encompass as a "business decision". It was, however, a business decision which was motivated by "self-protection", which, pursuant to Weir, Allstate and the commentators, gives it non-voluntary status for purposes of determining Encompass' rights to pursue equitable subrogation against the defendant.

For the reasons stated above, even if Encompass had no obligation to make payment under its policy, as the defendant argues, that fact alone is irrelevant in deciding whether the payment was voluntary in nature. As a practical matter, neither Encompass, the excess carrier, nor Great Northern, the primary carrier, had any legal obligation to make any payment in the underlying claim. The "obligation" to pay only comes about when the "covered person becomes legally liable due an occurrence resulting in personal injury", as defined in the excess policy issued by Encompass. Undoubtedly, similar, if not identical, language is also contained in the primary policy issued by Great Northern. As with all pre-judgment settlements, "legal liability" in this matter had yet to be determined when the settlement was effectuated. The crucial issue is not whether Encompass was under some obligation to make payment under its policy, but rather whether the payment was made with a reasonable or good faith belief in obligation or, in the alternative, whether the carrier had a personal interest in making the payment. For the reasons stated above, Encompass qualified on both counts.

6

## II. THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDIN WHETHER THE DEFENDANT COMMITTED AN UNFAIR ACT PURSUANT TO M. G. L. c. 93A WHEN IT REFUSED TO SETTLE THE UNDERLYING CLAIM WITHIN ITS POLICY LIMITS.

As Great Northern correctly points out in its Memorandum, under Massachusetts law an excess insurer has no right to bring a direct claim against a primary insurer. Rather, the excess insurer's remedy is to assert a claim based on equitable subrogation, wherein the excess carrier becomes subrogated to the rights of the insured. Hartford Casualty Ins. Co. v. New Hampshire Ins. Co. 417 Mass. 115, 124 n7 (1994). Clearly Great Northern, as underlying insurer, owed a duty of good faith to its insured, Anthony Khouri, not to unreasonably expose the assets of its insured by refusing to settle a claim within its policy limits when liability was reasonably clear and damages exceeded the underlying policy limits. In this action for equitable subrogation, Encompass becomes subrogated to the rights of its insured (Khouri). Consequently, by extension, Great Northern owes the same duty to act in good faith to Encompass that it owes to the insured.[2] Hartford Casualty Insurance Co. vs. New Hampshire Insurance Co., 417 Mass. 115, 124.

In its Memorandum, Great Northern asserts two reasons why the Encompass claim under G. L. c. 93A should be dismissed. Great Northern first argues that since it breached no duty to Khouri (the insured), its refusal to reimburse Encompass for its $75,000.00 contribution is not "unfair or deceptive" as a matter of law. In response to this, Encompass says that the defendant has misconstrued the nature of the plaintiff's Chapter 93A against it. Encompass is not alleging that the defendant's refusal to reimburse it for its $75,000.00 contribution is an unfair and/or deceptive act, but rather that the defendant's refusal to settle the lawsuit within its policy limits was an unfair act giving rise to Chapter 93A liability. Furthermore, as to whether Great Northern breached

---

[2] As Footnote Number 7 in Hartford Casualty Ins. Co. v. New Hampshire Ins. Co. sets forth, some jurisdiction have even suggested that a primary insurer has a direct fiduciary duty to excess insurers to act with the utmost good faith in handling claims. However, whether it be by becoming subrogated to the rights of the insured or by a direct duty of care, it is clear Great Northern does owe a duty to Encompass to act in good faith. Hartford Casualty Ins. Co. v. New Hampshire Ins. Co. 417 Mass. At 124 n7.

7

any duty to its insured, the plaintiff would argue that that issue has yet to be decided. While it is true that the insured, Khouri, suffered not monetary damage as a result of the defendant's refusal to settle within the policy limits, this is only because Encompass made its payment of $75,000.00 to settle the lawsuit. Encompass, now "standing in the shoes of its insured", asserts that it <u>did</u> sustain damage in the amount of $75,000.00, due to the breach of duty of good faith owed by Great Northern to its insured and his subrogee, Encompass.

The second argument raised by Great Northern is that by participating in the settlement negotiations and approving the settlement amount, Encompass has waived its right to challenge the settlement on grounds of bad faith. This argument is without merit. In correspondence sent by counsel for Encompass to Great Northern, Encompass made its intentions abundantly clear. Encompass informed Great Northern that in the event that Great Northern persisted in its refusal to settle the underlying claim within its policy limits, then Encompass would make up the difference between Great Northern's offer of $4,000.00 and the injured party's settlement demand and then file suit against Great Northern to seek reimbursement for its payment. (Plaintiff's Complaint – Paragraph 11 and Exhibit 4). Encompass reiterated its position by seeing to it that language was inserted in the Settlement Agreement executed by all parties to the underlying action. That language reads as follows:

> "1.3 This Release, on the part of the Plaintiffs, shall be a full, binding and complete settlement among the Plaintiffs, Defendant and the Insurers and their heirs, assigns and successes. <u>However, this Release shall not affect any rights, Encompass Insurance Company has against Great Northern Insurance Company concerning the rights and obligations of the insurers in regard to the Complaint. Encompass Insurance Company does not release Great Northern Insurance Company in anyway, shape or manner</u>" (emphasis added). (Exhibit 1 - Settlement Agreement and Release).

It is the plaintiff's further contention that Great Northern's refusal to settle the underlying claim for an amount ($475,000.00) which was within its primary policy limits, after having been put on notice by Encompass that it (Encompass) would make up the difference of $75,000.00 if Great Northern Insurance refused, may, in and of itself, be

an unfair business practice. After Encompass put Great Northern on notice of its intentions, Great Northern could have reasonably concluded that the matter would be settled in any event, whether Great Northern increased its offer or not. Thereupon, in a demonstration of bad faith directed both to its insured and the excess carrier (Encompass), Great Northern refused to increase its outstanding offer of $400,000.00, knowing that Encompass would pay the difference. In a sense, Great Northern delegated to Encompass the non-delegable duty of good faith it owed to its insured.

## CONCLUSION

In summary, the contribution of $75,000.00 made by Encompass Insurance Company toward the settlement of the underlying action was not a "voluntary" payment and Encompass is not considered a "volunteer" for purposes of determining its right to pursue equitable subrogation against the defendant. Furthermore, there is a genuine issue of material fact as to whether the actions of the defendant, in failing to settle the underlying claim within its policy limits, engaged in an unfair business practice against Encompass, within the meaning of G. L. c. 93A.

For the reasons stated above, the Motion for Summary Judgment of the Defendant, Great Northern Insurance Company, should be denied.

Respectfully submitted,
The Plaintiff,
Encompass Insurance Company,
as Subrogee of Anthony Khouri
By Its Attorney,

_____
Richard J. Conner, Esq.
BBO No.:     094860
Law Offices of Richard J. Conner
424 Adams Street
Milton, MA 02186
(617) 698-6767

**EXHIBIT 1**

SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into this ___8th___ day of ___April___, 2004, by and between:

"Plaintiffs"   Marc A. Sabini, Albert Sabini and Cheryl Sabini

"Defendant"   Anthony Khouri

"Insurers"    Great Northern Insurance Company and Encompass Insurance Company

## RECITALS

A. Plaintiffs filed a Complaint against "Defendant" in the Superior Court, County of Suffolk, Civil Action No. 00-1723A (the "Complaint"), which Complaint arose out of certain alleged negligent acts or omissions of Defendant. In the Complaint, Plaintiffs sought to recover monetary damages as a result of that certain occurrence on or about April 10, 1999 at Brighton, Massachusetts, which resulted in personal and physical injuries to Marc A. Sabini.

B. Insurers are the liability Insurers of the Defendant, and as such, would be obligated to pay any claim made or judgment obtained against Defendant which is covered by its policy with Defendant.

C. The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might be, made for reason of the incident described in Recital A above, upon the terms and conditions set forth below.

## AGREEMENT

The parties agree as follows:

1.0   Release and Discharge

1.1   In consideration of the payments set forth in Section 2, Plaintiffs hereby completely release and forever discharge Defendant and Insurers from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings) including, without limitation, any and all known or unknown claims for bodily and personal injuries to Plaintiffs, or any future wrongful death claim of Plaintiffs' representatives or heirs, which have resulted or may result from an incident that occurred on or about April 10, 1999 in Brighton, Massachusetts.

1.2   This release and discharge shall also apply to Defendant's and Insurers' past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated.

1.3   This release, on the part of the Plaintiffs, shall be a fully binding and complete settlement among the Plaintiffs, Defendant and the Insurers, and their heirs, assigns and successors. However, this Release shall not affect any rights Encompass Insurance Company has against Great Northern Insurance Company concerning the rights and obligations of the insurers in regard to the Complaint. Encompass Insurance Company does not release Great Northern Insurance Company in anyway, shape or manner.

· 1

17.0   Effectiveness

This Settlement Agreement shall become effective immediately following execution by each of the parties.

Executed in triplicate this __8th__ day of __April__, 2004.

Plaintiffs:

*[signature]*
Marc A. Sabini

*[signature]*
Albert Sabini

*[signature]*
Cheryl Sabini

Attorney for Plaintiffs:

*[signature]*
Kevin P. Scanlon, Esquire

Insurer:

*[signature]*
Name:  Scott W. Langford
Title:  Sr. Litigation Examiner
Company: Great Northern Insurance Company

Insurer: *[signature]*

Name: Mork Sessa

Title: claim Manager
Company: Encompass Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon all counsel of record, by mail, postage prepaid.

Date: 3/15/05

Richard J. Conner, Esq.
Law Offices of Richard J. Conner
424 Adams Street
Milton, MA 02186
(617) 698-6767
BBO No.:    094860